**SIGNED THIS: September 21, 2012**

_____
**Thomas L. Perkins
United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| DAVID L. DUCKWORTH, ) | Case No. 10-83603 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| CHARLES E. COVEY, Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adv. No. 11-8104 |
| ) | |
| CASEY'S GENERAL STORES, INC., ) | |
| ) | |
| Defendant. ) | |

**O P I N I O N**

This matter is before the Court on cross motions for summary judgment filed by Charles E. Covey, Trustee (TRUSTEE), as Plaintiff, and Casey's General Stores, Inc. (CASEY'S), as Defendant, on the TRUSTEE'S complaint to recover payments totaling $1,215.68, as unauthorized postpetition transfers under section 549 of the Bankruptcy Code.

*Background*

The facts are not controverted. The Debtor, a self-employed grain farmer, filed a Chapter 7 petition on November 23, 2010. According to the schedules of assets and liabilities which were filed on November 29, 2010, the Debtor held no interest in any incorporated or unincorporated business, partnership or joint venture. He reported cash on hand and in a checking account in the total amount of $400. He scheduled crops worth $363,158 and farm equipment valued at $323,000.

State Bank of Toulon (SBT) is scheduled as a secured creditor on Schedule D filed by the Debtor, which lists debts owed to SBT totaling $2,340,249 secured by collateral valued at $686,158. The Debtor also scheduled several landlords as secured creditors, holding rights in crops. In its motion for relief from stay, SBT alleges that as of the filing date it was owed $2,329,226 and that the Debtor had no equity in the collateral, which included farm equipment and farm products (crops), and the proceeds therefrom. Michlig AgriCenter, Inc., also asserted crop liens. The first meeting of creditors was held on December 29, 2010. At that meeting, the Debtor falsely denied that he was the principal of Power Trading, LLC, and that he had a bank account in that name.

On August 10, 2011, the Debtor pled guilty to money laundering and bankruptcy fraud, admitting that, beginning in February 2009, he sold grain out of trust, contracting to sell corn under the names of Lighthouse Farms, Inc., and Midwest Farms, LLC, having established those entities for the purpose of selling the grain free of the lien of secured creditors. The Debtor acknowledged that he established bank accounts in the names of each of those entities, depositing the grain proceeds into those accounts, without SBT's

knowledge or consent. On November 7, 2010, the Debtor formed Power Trading as an Indiana limited liability company. On November 12, 2010, the Debtor withdrew funds totaling $97,000 from the Lighthouse Farms and Midwest Farms accounts. On November 22, 2010, just one day prior to filing his bankruptcy petition, the Debtor deposited $95,000 into an account he had opened days earlier in the name of Power Trading. On January 24, 2011, the Debtor established a second account in the name of Power Trading, funding the account with withdrawals totaling $24,000 from the existing account in the name of Power Trading.

After those facts came to light, the TRUSTEE filed an adversary proceeding to deny the Debtor's discharge and for a money judgment for the value of the assets not disclosed. The TRUSTEE and the Debtor entered into a stipulated judgment for denial of the Debtor's discharge and awarding judgment in the TRUSTEE'S favor for $99,816.25 plus costs of $250.[1] In that judgment, the Debtor admitted the underlying elements of sections 727(a)(2), (a)(3), (a)(4), (a)(5) and (a)(6), and agreed that, on the date of bankruptcy, he "owned" $94,900 in an account in the name of Power Trading, LLC.[2]

The TRUSTEE brought a separate adversary proceeding against numerous defendants, including SBT and other creditors claiming liens against the Debtor's property, seeking to avoid the lien of SBT and each of the landlord's liens on crops.[3] In

---

[1]The complaint in Adversary No. 11-8058 was filed on July 11, 2011. The stipulated order was entered on September 19, 2011. The Debtor was represented by an attorney.

[2]The Debtor also admitted to being the owner of an account in the name of Midwest Farms, LLC, which had a balance as of the filing of $1,416.25 and a 2008 Kawasaki Vulcan Classic 900 motorcycle, which he sold after the filing of the petition for $3,500.

[3]Adv. No. 11-8002.

3

that adversary, this Court has determined that SBT had a valid, unavoidable lien on crops that secured a promissory note dated December 15, 2008, in the principal amount of $1,100,000. *In re Duckworth,* 2012 WL 986766 (Bankr.C.D.Ill. 2012). The TRUSTEE has appealed that decision, but until and unless it is vacated or reversed, it stands as the law of the case. *Metro Container Corp. v. Teamsters Local Union No. 676,* 1987 WL 15225 at *5 (E.D.Pa. 1987).

The TRUSTEE brought this adversary against CASEY'S, seeking to avoid the seventy (70) payments it received from the accounts in the name of Power Trading as unauthorized postpetition transfers pursuant to section 549 and to recover the value of those transfers under section 550(a)(1). Attached to the complaint is a copy of the checking account statements for the two accounts of Power Trading reflecting the $95,000 deposit made on November 22, 2010. Those statements reflect that between November 23, 2010, and March 18, 2011, four hundred and sixty (460) transactions were debited to the accounts, expending virtually the entire initial deposit of $95,000. Seventy (70) of those transactions were for purchases made at several CASEY'S locations.[4] The amounts of the CASEY'S purchases range from a low of $1.38 to a high of $79.96. Fifty-eight (58) of the purchases were for less than $30.00. CASEY'S answered the complaint, denying that any of the funds it received were transfers of property of the bankruptcy estate. Both the TRUSTEE and the Defendant filed motions for summary judgment which are presently before the Court.

---

[4] The Casey's stores were located in Bradford, Buda, Saint David, Canton, Sheffield, Elmwood, Farmington and Princeton, all in Illinois.

*Analysis*

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Broth. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

Section 549 authorizes a trustee to avoid an unauthorized, postpetition transfer of property of the estate. 11 U.S.C. § 549(a). An action to avoid a transfer has four elements: (1) property was transferred; (2) the property was property of the bankruptcy estate; (3) the transfer occurred after the commencement of the case; and (4) the transfer was not authorized by the bankruptcy court or the Bankruptcy Code. *In re Blair*, 330 B.R. 206 (Bankr.N.D.Ill. 2005). Once the trustee establishes that a postpetition transfer of estate property occurred, the burden shifts to the defendant to prove the validity of the transfer. Fed. R. Bankr. P. 6001; *In re Rood,* 459 B.R. 581, 606 (Bankr.D.Md. 2011). Section 550 of the Bankruptcy Code governs the liability of transferees of transfers avoided pursuant to section 549. Under section 550(a)(1), an avoided transfer can be recovered from the "initial transferee." Under section 550(a)(2), the transfer is also recoverable from an "immediate or mediate" transferee of the initial transferee. Under that

provision, however, a subsequent transferee who takes a transfer for value, in good faith, and without knowledge of its voidability, is shielded from liability.

In his motion for summary judgment, the TRUSTEE asserts that Lighthouse Farms, Inc., Midwest Farms, LLC, and Power Trading, LLC, were alter ego entities of the Debtor whose separate status should be disregarded as a matter of Illinois law. If those separate entities are disregarded and their assets treated as if owned by the Debtor, he argues, then the funds in Power Trading's accounts were property of the Debtor's bankruptcy estate at the time he filed and thereafter. In support of the motion, the TRUSTEE presents a portion of the Debtor's deposition, a copy of his plea agreement and a transcript of his criminal guilty plea hearing in federal district court. In his deposition, the Debtor admitted that he had full dominion and control over the funds transferred to the Power Trading accounts and that the funds were spent on his personal living expenses. The TRUSTEE also submits a letter written by Michael Clark, as Trustee of TDA Concepts, the sole member of Power Trading, LLC, stating that Power Trading was not a business entity and that it was created for the "purpose of providing asset privacy and protection" of the personal property owned by the Debtor. In addition, the TRUSTEE submits various documents papering the trail of the grain proceeds from the elevator through the bank accounts held by the nondebtor entities to CASEY'S.

CASEY'S also filed a motion for summary judgment. Disputing the TRUSTEE'S alter ego theory, CASEY'S contends that Power Trading was the initial transferee of the funds from the Debtor, and that as a subsequent transferee, it took the funds in good faith and without knowledge of the avoidability of the transfers, and is protected under

6

section 550(b)(1). The TRUSTEE does not dispute that each transaction represents an ordinary retail sale of consumer goods. Nor does the TRUSTEE dispute CASEY'S assertions that neither it nor any of its employees were aware of the Debtor's bankruptcy filing and that it provided equivalent value in exchange for the transfers.

Initially, the Court determines that the deposit of funds into the accounts of the separate entities was a valid transfer under state law. The Debtor's admission that he "owned" the funds notwithstanding their deposit in the various accounts held in the names of other entities, made for the purpose of establishing liability under section 727(a), does not foreclose the issue of ownership here. Ownership is a mixed question of law and fact. *Chicago Title & Trust Co. v. Ward,* 332 Ill. 126, 130, 163 N.E. 319 (1928). Whether and when a transfer of ownership of personal property occurs is an ultimate fact that is determined by evidentiary facts, involving what was done in passing title or ownership and the legal effect attached to what was done. *Id.* at 130-31. It is difficult to see how the Debtor's assertion of ownership, made long after the time of the transfers, is relevant to the issue. It is undisputed that the Debtor intended to transfer the funds and, in fact, created the separate entities for that very purpose. The TRUSTEE relies heavily on the undisputed fact that the transfers were made to enable the Debtor to perpetrate a fraud upon his secured creditors. Whether a transfer of title is made, however, is not dependent upon the transferor's reasons for making it. That a transfer effective at the time made may later be undone by court order for reasons of illegality or fraud is a separate issue unrelated to whether the transfer occurred in the first instance.

7

The Court next determines that the TRUSTEE has failed to establish that he is entitled to summary judgment as a matter of law. There are two separate conceptual problems with his motion. First, it is undisputed that the funds ultimately transferred to CASEY'S were the collateral of secured parties and were not funds that the Debtor owned free and clear or that his general creditors had any claim against. While conceded by the TRUSTEE, he does not address the consequences of that fact upon his cause of action.[5] (For that matter, neither does CASEY'S.)[6] That the funds transferred were fully encumbered implicates certain basic bankruptcy principles. A trustee's avoiding powers are intended to be used to realize a benefit for the estate. Generally, where an avoidance action will benefit a particular creditor rather than the creditor body as a whole, a trustee does not have standing to pursue the claim. *In re Teknek, LLC,* 563 F.3d 639, 646 (7th Cir. 2009) (bankruptcy trustee has no standing to bring personal claims of creditors defined as those where the wrongful conduct has caused harm to a specific creditor); *Lumpkin v. Envirodyne Industries, Inc.,* 933 F.2d 449, 463 (7th Cir. 1991) (alter ego claims against debtor could not have been asserted in the bankruptcy proceeding because they were not claims of the creditors generally, but were claims unique to certain former employees); *In re C.W. Min. Co.,* --- B.R. ----, 2012 WL 3839287 (10th Cir.BAP 2012) (purpose of § 549 is to allow a trustee to avoid postpetition transfers that

---

[5] No contention is made by the TRUSTEE that section 549 operates to avoid a valid prepetition lien.

[6] By ignoring or giving short shrift to several obvious issues, perhaps because of the small amount at issue, the parties seem to invite the Court to do the same. In order to grant summary judgment, however, a trial court must determine that a movant is entitled to judgment as a matter of law. In this Court's view, the TRUSTEE'S theory of relief, applying section 549 in combination with the alter ego doctrine to a complicated and unusual set of facts, raises difficult issues both of federal bankruptcy and state law that must be resolved before it can be determined that a judgment is proper.

8

deplete the estate); *In re Wood Treaters, LLC,* --- B.R. ----, 2012 WL 3059379 (Bankr.M.D.Fla. 2012) (the issue of injury to the estate is relevant to whether a trustee may avoid a postpetition transfer under section 549).

In the present case, the prepetition sale of the grain was wrongful and the transfer of the proceeds to the three entities was fraudulent.[7] The victims of the Debtor's fraud, however, were not his unsecured creditors, but those creditors holding a lien on the crops. While some courts indicate that the fact of an unavoided prior lien on transferred property is not a statutory "defense" to a section 549 claim, the lien's existence, and the corresponding lack of harm to the estate, provides a valid basis to deny avoidance under section 549 unless the debtor had some unencumbered equity in the property. *See In re C.W. Min. Co.,* 465 B.R. 226, 231-33 (Bankr.D.Utah 2011), *aff'd,* 2012 WL 3839287 (10th Cir.BAP 2012); *In re Saunders,* 155 B.R. 405, 414 (Bankr.W.D.Tex. 1993). This Court has previously expressed agreement with this reasoning. *In re Rebecca A. Knight, M.D., S.C.,* 2006 WL 3147714 at *4 (Bankr.C.D.Ill. 2006). It is not necessary, however, to decide the motions on this basis, as the TRUSTEE'S theory suffers from an even more serious, and ultimately fatal, flaw.

The more serious problem with the TRUSTEE'S action concerns the overbroad application of the alter ego doctrine. The entities Lighthouse Farms, Midwest Farms, and Power Trading were all properly created under state law and validly existing as separate entities. The TRUSTEE does not contend otherwise. The crop proceeds were

---

[7] In the regular course of its lending relationship with the Debtor, SBT required the Debtor to identify three grain dealers to or through whom he would market his grain, and to agree that he would not sell grain to or through any other dealer; SBT sent notices apprising the designated dealers of its lien rights. *See in re Duckworth,* 2012 WL 986766 (Bankr.C.D.Ill. 2012).

9

transferred to and among those entities prepetition. In the complaint, the TRUSTEE makes the bare allegation that although the funds were transferred to CASEY'S out of accounts in the name of Power Trading, the bankruptcy estate "owned the funds in said accounts" which were used to make the transfers. The complaint itself states no basis for disregarding the apparent interest of Power Trading or the apparent prior interest of Lighthouse Farms and Midwest Farms. In his motion for summary judgment, the TRUSTEE argues that those three entities were each an alter ego of the Debtor whose separate existence should be disregarded for purposes of determining whether the funds were estate assets when paid to CASEY'S.

The TRUSTEE asserts that Illinois law should apply to the alter ego determination since the transactions at issue occurred in Illinois. The TRUSTEE'S contention as to choice of law is mistaken. When a court considers disregarding a corporate entity by piercing the corporate veil, the law of the state of incorporation applies. *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928, 933 (7th Cir. 1996); *Rubbermaid, Inc. v. Robert Bosch Tool Corp.,* 2010 WL 3834410 at *6 (C.D.Ill. 2010); *In re Wish,* 472 B.R. 763, 782 (Bankr.N.D.Ill. 2012). Since Power Trading was formed in Indiana, Indiana law determines whether its status as a separate entity should be disregarded. The state of formation for Lighthouse Farms and Midwest Farms is not part of the record, but the Illinois Secretary of State has no record of those entities. Since the funds paid to CASEY'S all came from either of the two accounts owned by Power Trading, the issue may be decided solely on the basis of the application of the alter ego doctrine to that entity, under Indiana law.

Because the alter ego doctrine is equitable in nature, requiring a review of all of the facts and circumstances, it is important at the outset to understand why the TRUSTEE is relying upon an equitable remedy created under state common law.  The Debtor's prepetition transfers of funds to the three entities was admittedly fraudulent and thus avoidable under section 548.  The TRUSTEE, however, has not bothered to sue those entities under section 548 or otherwise.  His decision is understandable given that the funds were entirely dissipated postpetition and those entities, clearly liable as initial transferees under section 550(a)(1), are worthless shells against whom a judgment would be uncollectible.[8]  Most significantly for our purposes, an immediate transferee such as CASEY'S, who gave fair value, in good faith, and without knowledge of the voidability of the transfer to Power Trading, could not be subjected to recovery of the funds it received under section 550(b)(1).  That "good faith transferee" defense to liability is not available to an initial transferee, i.e., one who takes directly from the debtor or the estate.  Under the undisputed facts as they existed on the petition date, Lighthouse Farms and Midwest Farms are initial transferees, Power Trading is an immediate transferee and CASEY'S is a mediate transferee.[9]  If the existence of the three entities is recognized, then the transfer of funds from the Debtor occurred prepetition – no postpetition transfer of property of the estate would be at issue and section 549 would

---

[8]In a very important practical sense, the TRUSTEE'S use of the alter ego doctrine is driven by the insolvency of the three entities.  If a judgment against those entities was collectible, the TRUSTEE, presumably, would have gladly recognized their separate existence and sued them under section 548.  From this perspective, it is apparent that the alter ego doctrine is asserted merely as a litigation strategy, not because the facts permit no other interpretation.

[9]There is some indication that some portion of the funds was spent not by the Debtor, but by his companion.  If so, she would also be a separate party in the chain of transfers whose existence could alter the outcome.

11

be inapplicable.

The TRUSTEE makes a creative attempt to use the alter ego doctrine to entirely reconfigure the factual landscape. He uses it to trigger the availability of section 549 as a cause of action for avoidance, by focusing on the postpetition transfers to CASEY'S rather than the prepetition transfers to Lighthouse Farms, Midwest Farms and Power Trading. He also uses it to eliminate CASEY'S ability to rely on the good faith transferee defense by recasting CASEY'S as an initial transferee rather than an immediate or mediate transferee. The TRUSTEE suggests that the effect of the alter ego doctrine is that the transfers to Lighthouse Farms, Midwest Farms and Power Trading may be ignored and the transfers treated as if they had been direct payments from the Debtor to CASEY'S. He cites no precedent where the alter ego doctrine has been used for this purpose and the Court is aware of no such precedent.

The predominant function of the alter ego doctrine is to set aside the liability shield afforded by the separate entity in order to hold its owners personally liable for the entity's debts. *Koch Refining v. Farmers Union Cent. Exchange, Inc.,* 831 F.2d 1339, 1344 (7th Cir. 1987). In the bankruptcy context, the doctrine has occasionally been applied to enable a chapter 7 trustee to administer assets owned by and in the possession of a debtor's alter ego. *See In re F&C Services, Inc.,* 44 B.R. 863, 868-70, (Bankr.S.D.Fla. 1984). Contrary to the TRUSTEE'S representations, however, that application is properly made only in limited circumstances, where the interests of separate creditors of the alter ego entity are not adversely affected, and as a less cumbersome alternative to substantive consolidation. *See In re Crabtree,* 39 B.R. 718 (Bankr.E.D.Tenn. 1984). The TRUSTEE'S proposed use of the alter ego doctrine to change the facts of ownership and collapse a

12

chain of multiple transfers appears to be unprecedented.

The TRUSTEE relies upon *In re Sklarin,* 69 B.R. 949 (Bankr.S.D.Fla. 1987). While that decision is consistent with the general purpose of the alter ego doctrine, it has little relevance to the specific issue at bar, which arises from an entirely different set of facts. The court in *Sklarin* held a trial on a creditor's complaint to deny the debtor a discharge pursuant to sections 727(a)(2)(A), 727(a)(4)(A) and 727(a)(5). The court denied the discharge on all three grounds, including that the debtor made a false oath by omitting from his schedules the assets of two alter ego entities. The debtor had also failed to disclose the existence of the two corporations or his statement of financial affairs. The court used the alter ego doctrine only in support of its alternative holding that the debtor made a false oath by failing to disclose the two corporations or their assets in his filings. From the standpoint of estate administration, the corporations' assets were thus made available to pay estate creditors, but the court's determination that the assets were property of the estate was not used as a basis for avoidance or recovery of transfers made to third parties.[10] Moreover, the court also determined that the debtor's transfers of money to the corporations within one year before bankruptcy were fraudulent, having been made by the debtor with the intent to hinder, delay or defraud his creditors. Therefore, the alter ego doctrine was not necessary to bring the assets of the corporations into the estate, since the transfers were avoidable as fraudulent.

The application of an equitable remedy is within the court's sound discretion and

---

[10]The court apparently did not view the application of the alter ego doctrine as a matter of state law, citing only federal caselaw in support of the use of the doctrine. In the Seventh Circuit at least, it is clear that state law dictates how the alter ego doctrine must be applied.

should not be used where it would work an injustice. *Matter of Cassidy,* 892 F.2d 637, 642 (7th Cir. 1990). When confronted with an alter ego argument, a bankruptcy court should consider whether piercing an entity's corporate veil will permit an injustice to be worked upon those who in good faith dealt with the entity. *Hillebrand v. Sav-Co,* 353 F.Supp. 19, 21 (E.D.Ill. 1972); *In re Security Products Co.,* 310 F.Supp. 110, 119 (E.D.Mo. 1969). As long as those third parties would not be inequitably or unjustly enriched if the corporate veil is not pierced, equity will not warrant the remedy. *Id.* Thus the Court must consider the fairness to CASEY'S of the application of the alter ego doctrine.[11]

Focusing on Power Trading as an Indiana limited liability company, Indiana courts are reluctant to disregard a corporate entity, *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228 (Ind. 1994), but they will do so to prevent a fraud or injustice to a third party. *Commissioner, Dept. of Environmental Mgmt. v. RLG, Inc.,* 755 N.E.2d 556 (Ind. 2001). Several Indiana courts have stated that a corporate entity should be disregarded *only* to protect innocent third parties from fraud or injustice when transacting business with the entity. *Extra Energy Coal Co. v. Diamond Energy and Resources, Inc.,* 467 N.E.2d 439, 441-42 (Ind.App. 3 Dist. 1984) (citing cases). The burden is on the party seeking to pierce the corporate veil to prove that the corporate form was so ignored or manipulated that it was merely an instrumentality of another, and that misuse of the corporate form would constitute a fraud or promote injustice. *Aronson v. Price,* 644 N.E.2d 864 (Ind. 1994). Under Indiana common law, the equitable remedy of piercing the corporate veil

---

[11] While it is true that the alter ego doctrine provides the only avenue of recovery against CASEY'S, a bankruptcy court does not decide disputes over theories of avoidance by robotically adopting the one that is most favorable to the estate. State common law theories such as the alter ego doctrine must be applied as the state courts would, without regard to whether the result favors the bankruptcy estate.

is used to disregard the limited liability afforded by an entity so as to impose personal liability on one who, in equity, should fairly be held responsible for the debts and liabilities of the disregarded entity. *See Escobedo v. BHM Health Assoc., Inc.,* 818 N.E.2d 930 (Ind. 2004).

But the TRUSTEE is not seeking to pierce Power Trading's veil of limited liability in order to hold the Debtor liable, a result he has already obtained in a separate adversary, in addition to having denied the Debtor's discharge.[12] Instead, the TRUSTEE'S purpose is to hold CASEY'S liable, whom the TRUSTEE admits was an innocent third party retailer who acted in good faith and gave fair value in exchange for the payments it received. But the TRUSTEE cannot establish that piercing the veil, in the circumstances of this bankruptcy proceeding, is necessary to prevent a fraud or injustice and achieves a result that is fair and equitable to all parties in interest, including CASEY'S. The crop proceeds were wrongfully expended in fraud of the secured parties. Piercing the corporate veil cannot prevent or remedy that fraud. Arguably, rather than preventing an injustice, it would actually serve to perpetrate one against innocent parties like CASEY'S, who acted in good faith, with no reason to know of or suspect the Debtor's wrongdoing. In this Court's view, Indiana courts would not sanction such use of the theory.

The bankruptcy court faced a similar argument in *In re Lawler,* 53 B.R. 166 (Bankr.N.D.Tex. 1985), where before bankruptcy the debtor conveyed title to real estate

---

[12] The Court does not consider the judgment against the Debtor, rendered in other adversary proceedings, to have issue preclusive effect here.

15

to a corporation and then to family trusts that were later found to be alter egos of the debtor. A creditor holding a mortgage foreclosed on the real estate postpetition without first obtaining stay relief. The debtor sought to undo the foreclosure by arguing that as a result of the alter ego determination, the foreclosure was an action taken postpetition against property of the estate in violation of the stay and thus void. The court refused to accord the alter ego determination a retroactive effect for property of the estate purposes, reasoning that using the doctrine in that way "to frustrate what was, at that time, a legitimate foreclosure of a lien against property of a nondebtor entity, would be a travesty." *Id.* at 169. The court characterized the debtor's argument as an attempt "to use the alter ego doctrine not to prevent injustice to third parties but to effectuate it," a result that would be "inherently improper" and a "convolution of an equitable doctrine." *Id.* at 170. The court held the property at issue not to be property of the estate at the time of the foreclosure sale notwithstanding the alter ego determination. *Id.* This Court agrees with *Lawler's* reasoning and result. It is difficult to see why that reasoning is not equally applicable to the facts at bar.

At the time of the transfers, a separate corporate entity existed and that is the entity that made the transfers to CASEY'S. Even a shell corporation can be an "initial transferee." *In re Commercial Loan Corp.*, 396 B.R. 730 (Bankr.N.D.Ill. 2008). In addition, the TRUSTEE'S position is contrary to the majority rule that transferred property subject to recovery in an avoidance action is not property of the estate until it is actually recovered by the trustee.[13] *In re Colonial Realty Co.,* 980 F.2d 125, 131 (2nd Cir. 1992);

---

[13]Moreover, this is not a situation where the actual physical property transferred is sought to be recovered, such as would likely be the case if the real estate, equipment or a vehicle had been transferred. The TRUSTEE makes no argument, as there is none to be made, that the funds paid to CASEY'S are traceable and may be recovered in kind.

16

*Bonar v. Ray*, 2011 WL 1100467 (C.D.Ill. 2011)(McDade, J.); *In re ABC-NACO, Inc.*, 331 B.R. 773, 780-81 (Bankr. N.D.Ill. 2005)(Wedoff, J.).

Finally, the TRUSTEE'S theory of relief is flawed for one additional reason. Piercing the corporate veil is a state common law equitable remedy that has nothing to do with federal bankruptcy law and, it goes without saying, is never applied by state courts in a bankruptcy context. As such, extreme caution is warranted when a bankruptcy court is asked to apply the remedy in the context of a bankruptcy cause of action such as that created by section 549. The doctrine is used by state courts to impose a result (usually personal liability), for reasons of equity, where the result would not otherwise be available under the facts of the transaction. The doctrine alters the legal effect of a transaction in spite of the facts. Here, the TRUSTEE contends that the alter ego doctrine may be used to recreate a different set of facts, to rewrite history so to speak, for a purpose cognizable only under bankruptcy law, with no state law corollary: to deprive a defendant of the statutory good faith transferee defense provided by section 550(b)(1). In this Court's view, adopting the TRUSTEE'S theory would constitute a gross overextension of the alter ego doctrine far beyond its identifiable state law parameters and purposes.

Equity grows in the cracks of the law. Courts are loathe to use equitable doctrine in a way that contradicts statutory rights and remedies. It is a long-standing maxim that

---

As discussed above, the authority relied upon by the TRUSTEE supports the argument that property transferred to an alter ego entity that is still in the possession of that entity may, under some circumstances, be deemed to be property of the estate. That argument wanes where, as here, the property transferred is not subject to recovery in kind.

Case 11-08104   Doc 19   Filed 09/21/12   Entered 09/21/12 16:10:13   Desc Main
        Document - Sua Sponte   Page 18 of 18

"equity follows the law" so that wherever the rights of parties are clearly defined and established by law, "equity has no power to change or unsettle those rights." *Hedges v. Dixon County,* 150 U.S. 182, 192, 14 S.Ct. 71 (1893). A court of equity may not create a remedy in violation of law. *Rees v. City of Watertown,* 86 U.S. 107, 122, 1873 WL 16060 (1873). When the law determines the rights of the respective parties, a court of equity is without power to decree relief which the law denies. *In re United Airlines, Inc.,* 438 F.3d 720, 737 (7th Cir. 2006).

Under the undisputed facts of this case, CASEY'S is a mediate good faith transferee specifically exempted from liability by the statutory scheme laid out in section 550. The alter ego doctrine should not be used, in the name of equity, to contradict the statutory scheme and to deprive CASEY'S of a right clearly provided in the Bankruptcy Code.

The TRUSTEE'S theory of recovery, relying upon the state common law alter ego doctrine, while creatively conceived and pleaded, withers under the scrutiny of proveability in the context of the undisputed facts here. The TRUSTEE cannot establish that he is entitled to judgment as a matter of law. Summary judgment will be entered in favor of CASEY'S.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###